IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BECKY IRENE DINGMAN,

                      OPINION AND ORDER

          Plaintiff,

                      19-cv-1056-bbc

    v.

ANDREW M. SAUL, Commissioner
of Social Security,

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Becky Irene Dingman is seeking review of a final decision denying her March 1, 2017 applications for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). In her applications for benefits, plaintiff claimed that she had the severe impairments of degenerative disc disease, migraine headaches, depression, anxiety disorder and obesity and had not engaged in substantial gainful activity since April 1, 2015. After her claims were denied initially and on reconsideration, she asked for and was granted a hearing before an administrative law judge (ALJ). The ALJ later filed a written opinion in which she found that even though plaintiff had severe impairments and required the use of a cane, she was not disabled because she retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567)(a) and § 416.967(a). Plaintiff asked the commissioner for a review of the decision, but the request was denied, which meant that the ALJ's decision was treated as the commissioner's final decision.

      In her appeal in this court, plaintiff contends that the ALJ erred in three respects:

1

1. The ALJ had "played doctor" by determining the impact of plaintiff's back surgery without having medical support for her determination;

2. The ALJ failed to give proper weight to the opinion of her treating physician, Dr. Michael Stark; and

3. The ALJ erred in assessing the weight to be afforded the opinion of the consultative examiner, Dr. Kurt Weber.

Plaintiff also has filed a motion for instanter, dkt. #14, asking that the court accept her reply brief, which was filed one day late.

The motion for instanter will be granted. However, for the reasons set out below, I am not persuaded by plaintiff's arguments with respect to the merits of her appeal. Therefore, I will affirm the commissioner's decision.

BACKGROUND FACTS

A. Relevant Medical Evidence

Plaintiff Becky Irene Dingman was born in 1972. She is the mother of four grown children whom she supported by working jobs in construction, working at a restaurant and by managing and later owning a bar. In 2013, she began experiencing back pain that interfered with her work.

Plaintiff's medical record includes a consultative mental status evaluation by Kurt Weber, Ph.D., undertaken on June 9, 2017 at the request of the agency. AR 531-36. Dr. Weber reported that plaintiff lived with her parents, cared for her grandchildren, helped with the housework and laundry, prepared simple meals, read articles from the newspaper or magazine and used a digital technology device. AR 532. She said she had feelings of guilt

2

about losing her tavern business and felt depressed or hopeless. AR 533. She also had trouble sleeping and attributed it to "racing thoughts and physical pain." Id.

In Dr. Weber's opinion, plaintiff had mild limitations in understanding, remembering and carrying out simple instructions and in her ability to respond appropriately to supervisors and co-workers. AR 535. He stated that she would have moderate limitations in her ability to maintain concentration, attention and work pace, as well as in her ability to adapt to changes in the work environment. AR 535-36. However, Dr. Weber found that plaintiff would experience marked limitations in her ability to withstand routine work stress. AR 536. The doctor believed that plaintiff had "symptoms of sufficient severity and number as to warrant diagnoses of unspecified anxiety disorder and unspecified depressive disorder." AR 535. He viewed plaintiff's relatively stable work history, her completion of her secondary education and her parents' support as potential strengths. Id.

On June 21, 2017 and October 20, 2017, the state agency physicians found that plaintiff was limited to light work. AR 95-96, 135-136. At the reconsideration level of review, the state agency physician assessed frequent and occasional postural limitations and avoiding concentrated exposure to hazards.

In June 2017, state-agency psychologist Dr. Erika Gilyot-Montgomery found that plaintiff's adaptation limitation was at most moderate and that she could perform routine tasks with clear expectations. AR 100. The doctor specifically explained that plaintiff's reports of activity and work conflicted with Dr. Weber's opinion that plaintiff had marked limitations withstanding routine stress. AR 93, 100-01, 536. In October 2017, state-agency

psychologist Darrel Snyder found similar moderate limitations, AR 141-42, and specifically concluded that Dr. Weber had underestimated plaintiff's ability to handle work stress. AR 133.

On October 17, 2017 and again on January 5, 2018, plaintiff's treating physician, Michael Stark, D.O., noted that plaintiff suffers from migraines and has chronic low back pain from degenerative disc disease that radiates down her right leg with sciatica. He wrote that she takes about one Percocet a day for pain and walks with a cane. Plaintiff also reported that she was helping to raise her grandchildren. AR 554-56.

In March 2018, plaintiff had a mental health evaluation by counselor Lisa Mycanka, a licensed social worker with the Mayo Clinic. AR 567-68. Plaintiff told Mycanka that she watched her four grandchildren, who were all under the age of three, from 6:00 a.m. to 6:00 p.m. Monday through Friday. AR 569. Her leisure time activities included sports and other physical activities, including camping and swimming. AR 570. Plaintiff said that she was experiencing increased anxiety, racing thoughts, strong anger and other problems, including some thoughts of self-harm. She also said that she had three herniated discs and two bulging discs in her back. Mycanka's diagnosis was post traumatic stress disorder, AR 567, but by April 2018, she found plaintiff's mood to be euthymic, with no thoughts of self-harm. AR 579. In April 2018, plaintiff also reported experiencing more pain down the right lower back into the right buttock. AR 577.

Dr. Timothy McKenna reported that imaging studies taken in July 2018 showed a large central disc protrusion at L4-5, which was new when compared with her 2016 imaging

study, and associated moderate central canal narrowing an severe left lateral recess stenosis with compression of the L5 nerve roots. A surgical consultation was recommended. AR 592, 605. Plaintiff received a steroid injection on July 26, 2018, which gave her some relief. AR 602, 604-05. On August 9, 2018, Dr. McKenna noted that he would try a repeat steroid injection and increase plaintiff's dose of gabapentin. Plaintiff had a neurosurgery appointment on August 14, 2018. Dr. McKenna wrote that in terms of disability, he did not foresee plaintiff's back pain causing long-term disability. AR 605.

On August 22, 2018, plaintiff had a lumbar laminectomy and discectomy, which relieved pressure on her sciatic nerve. AR 606, 615. On September 9, 2018, plaintiff reported that the surgery had favorably altered her radiating pain, but reported a burning pain in her right foot and some numbness in her right leg. AR 625. In September 2018, social worker Mycanka reported that plaintiff's back surgery had gone well, she was participating in physical therapy and her mood was essentially normal, although plaintiff said she "had some odd nerve pain in the top of her foot that, when touched by anything, felt as it was burning. AR 627. The record shows that plaintiff was working with Dr. Stark to ease her remaining foot pain. AR 630-31. Dr. Stark also noted that plaintiff no longer had the radiating pain down her right leg. AR 630.

On November 20, 2018, Dr. Stark completed a check-box questionnaire sent by plaintiff's counsel. He wrote that plaintiff could stand and walk for no more than two hours in an eight-hour day, stand for only 15 minutes at a time and lift 10 pounds occasionally. AR 635-36. He added that plaintiff would need to have her feet elevated with "prolonged

sitting" and would need 32 unscheduled breaks of two minutes in length throughout a normal eight-hour day.  Id.

### B.  Hearing Testimony

At the December 7, 2018 hearing before the ALJ, plaintiff testified that even though her surgery was successful in relieving her back and sciatica pain, she had pain running up the side of her leg, as well as numbness on her right calf.  AR 56-57.  She also testified that she uses a cane all of the time, unless she is going shopping, when she uses a walker.  AR 57.  Plaintiff drives a car.

Now that her children are grown, plaintiff takes care of four of her grandchildren for 12 hours a day, five days a week while their parents work.  At the end of 2018, the children ranged in age from one to four years old.  Another grandchild, an eight year old, comes to plaintiff's house to be cared for after school.  Plaintiff feeds the children, reads to them, does arts and crafts projects and baking with them and watches them while they play on the play set in the yard.  AR 58-60.

Plaintiff often has swelling in her legs, and when that happens, she tries to elevate her legs.  AR 60.  She can stand for 10 to 15 minutes and sit for 15 to 20 minutes at a time before having to move.  AR 61-62.  Plaintiff also has weakness in her hands that causes her to drop objects, but she can lift her 25-pound granddaughter.  AR 63.  Plaintiff says she has frequent migraines, AR 64, as well as problems with depression and anxiety, for which she goes to counseling.  AR 65.

Vocational expert Thomas Gustloff testified at the hearing about plaintiff's ability to work, noting that plaintiff's past work had been in taverns, working as a manager or owner, but that she also had worked at a restaurant and in construction, building houses. AR 67. He classified most of plaintiff's work at the tavern as medium work and the house building work as medium to heavy. Id. Gustloff testified that an individual of plaintiff's same age, education, work experience and RFC could not perform plaintiff's past work, but could perform the unskilled, sedentary positions of charge account clerk, telephone information clerk and order clerk. Of those jobs, the first two categories includes 50,000 people nationally and the third includes 30,000. AR 26, 69.

In response to a question from the ALJ, Gustloff added that he would not reduce the number of available jobs even if plaintiff had to use a cane for balance and ambulation. Id. In response to questions from both the ALJ and plaintiff's counsel, he added that the employer tolerance for an employee's being off task would be up to two days out of 30; missing two or more days would generally lead to loss of the job. AR 70. He said also that a person who needed a sit-stand option or had to recline while working would be unlikely to be hired. AR 71.

## C. ALJ's Decision

In a written decision issued on March 19, 2019, the ALJ used the familiar five-step evaluation process to determine whether plaintiff was disabled. She found at the first step that plaintiff had not engaged in substantial gainful activity since her alleged onset date of

7

April 1, 2015.  AR 17.  At step two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease, migraines, depression, anxiety disorder and obesity.  Id.

At step three, the ALJ considered the listed impairments set out by the Social Security Administration and found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Pt. 404, Subt. P, App. 1.  AR 18.  Plaintiff's back disorder did not meet Listing 1.04 or result in an inability to ambulate effectively.  AR 18.  Assessing plaintiff's migraines, the ALJ found no evidence to support a finding that the headaches equaled Listing 11.02 or any other listed impairment.  She also found no evidence that plaintiff's obesity equaled a listing since it did not result in any end organ damage and her heart and lung examinations were normal.  AR 18.

The ALJ found that plaintiff's mental impairments did not meet Listings 12.04 or 12.06 because she did not have an extreme limitation or two marked limitations.  The ALJ determined that plaintiff had mild limitations in understanding, remembering or applying information and in interacting with others and moderate limitations in concentrating, persisting or maintaining pace and adapting or managing herself.  AR 19.

Before going on to step four, the ALJ considered plaintiff's residual functional capacity and concluded that plaintiff could perform sedentary work, as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except that she would require the use of a cane.  According to the ALJ, plaintiff could occasionally climb ramps and stairs, but she could never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; have occasional

exposure to wetness and to workplace hazards, including unprotected heights, moving mechanical parts and operating motor vehicles; and carry out simple instructions, make simple work-related decisions and tolerate occasional changes in a routine work setting. AR 19.

In reaching her decision, the ALJ summarized the medical evidence and reviewed the opinions offered by plaintiff's treating and examining providers. The ALJ accepted Dr. Stark's limitation to sedentary work, but rejected the more extreme limitations he had listed, on the ground that nothing in the record supported them. AR 23. In addition, she rejected the doctor's conclusion that, in order to work, plaintiff would need to elevate her legs, take excessive breaks and require absences of more than two days a month. The ALJ assigned great weight to Dr. Weber's opinion except for his finding that plaintiff had a marked limitation in handling stress. AR 24. With respect to the state agency physicians, the ALJ assigned great weight to the postural and environmental limitations assessed by the medical consultants, but found that "the record at the hearing level better support[ed] a finding that she [was] limited to sedentary exertional work with use of a cane." Id. She adopted the findings of the consulting psychologists. AR 25.

At step four, the ALJ found that plaintiff could not perform any of the work she had done in the past (tavern operator, house builder, cook and bartender). AR 25. She found also that plaintiff was 42 years old on her alleged disability onset date and was classified as a younger individual. At step five, the ALJ relied on the vocational expert's testimony that a person of plaintiff's age, education, work experience and RFC could perform a significant

9

number of jobs in the national economy, including charge account clerk, telephone information clerk and food and beverage order clerk. AR 26. Thus, the ALJ concluded that plaintiff was not disabled. AR 27.

OPINION

A. "Playing Doctor"

The record shows that plaintiff had surgery on August 22, 2018 and reported feeling much improved. Subsequently, she experienced a burning pain at the right dorsum (the top of the foot), and her doctor, Dr. Stark, referred her to physical medicine for treatment alternatives. AR 630. However, the record does not reveal any other information about plaintiff's back pain, the result of the physical medicine referral or whether plaintiff continues to suffer from the foot problem.

Given the lack of more recent medical evidence, plaintiff contends that the ALJ did not have a sufficient information on which to assess the impact of plaintiff's back surgery on her ability to work and inappropriately provided her own lay opinion as to plaintiff's ability to work at a limited sedentary level. Specifically, plaintiff argues that "[t]he ALJ was not competent to determine how the residual functional capacity would have been impacted by [plaintiff's] surgery and [plaintiff's] post-surgery condition. "An ALJ may not substitute his own judgment for a physician's without relying on other medical evidence on record." Plt.'s Br., dkt. #10 (citing Murphy v. Astrue, 496 F.3d 630, 634 (7th Cir. 2007)). See also Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative

10

law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")

Plaintiff maintains that the ALJ should have sought additional medical expertise to determine the impact of the new evidence—the results of her surgery—on her ability to work. E.g., Lambert v. Berryhill, 896 F.3d 768, 774-75 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."); Moreno v. Berryhill, 882 F.3d 722, 728-29 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018) (ALJ plays doctor when "new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion"). The commissioner disagrees, pointing out that it is the claimant and not the ALJ who bears the burden of presenting evidence of disabling limitations, Summers v. Berryhill, 864 F.3d 523, 527 (7th Cir. 2017), and that an ALJ may presume that a claimant represented by counsel makes her best case for benefits, Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013). See also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is a better position to provide information about his own medical condition, to do so."); Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.").

In this case, the ALJ reached her conclusion that plaintiff was able to perform a limited range of sedentary work in reliance on medical reports that plaintiff's condition had improved following surgery. She did not take it upon herself to interpret the findings of additional medical tests.

Plaintiff does not identify any important evidence that the ALJ failed to address or present any evidence or medical opinion explaining what additional limitations the surgery may have imposed or how it affected her work-related functioning. As this court has explained, "Moreno supports the conclusion that ALJs are not forbidden in all circumstances from independently evaluating medical records . . . [I]t makes sense that ALJs would be permitted to consider medical records without the assistance of an expert when the records do not require medical expertise to interpret." Salvino v. Saul, No. 19-cv-422-jdp, 2020 WL 467902, at *2 (W.D. Wis. Jan. 29, 2020). Moreover, plaintiff has not shown that she asked the ALJ to consult another doctor until this matter was before this court. In these circumstances, I conclude that plaintiff has not shown that the ALJ had any duty to obtain the medical evidence that plaintiff failed to submit.

B. Dr. Stark's Opinion

Plaintiff next argues that the ALJ erred in not giving greater weight to the opinion of Dr. Stark, who found that plaintiff could stand or walk for less than two hours a day, sit about two hours a day, needed to elevate her feet with prolong sitting and needed 32 two-minute breaks a day. The ALJ said that she gave these extreme limitations no weight because Dr. Stark had provided "very little" explanation of the evidence he relied on in forming this opinion" and had made no reference to "positive objective clinical or diagnostic findings to support his findings." AR 23. She added that the "more extreme limitations given by Dr. Stark, [] appear to be based largely on subjective statements by the claimant."

12

Id. In addition, the ALJ reasonably explained that Dr. Stark's extreme limitations conflicted with the emotional and physical demands of solo care for numerous young children. AR 23-24.

Plaintiff does not challenge the reasons the ALJ gave for discounting Dr. Stark's opinion. Instead, plaintiff says that the ALJ should have solicited plaintiff's November and December 2018 medical records because the fact that plaintiff had the kind of surgery she did "is strong objective evidence upon which a medical expert may opine," dkt. #10, and the ALJ "failed to acknowledge that a medical expert assesses cases 'through the lens of his professional expertise.'" Id. (citing Price v. Colvin, 294 F.3d 836, 840 (7th Cir. 2015) ("[T]he trained physician, not the ALJ, is better positioned to discern 'true complaints' from exaggerated ones."). Because these arguments reiterate plaintiff's view that the ALJ should have done more to develop the evidence to show that plaintiff qualifies for benefits, they fail for the same reasons explained above. Again, developing evidence for the plaintiff is not the ALJ's responsibility. Moreover, Dr. Stark could have, but did not, offer an opinion about the effects of plaintiff's surgery on her functioning.

Plaintiff also argues that the ALJ did not evaluate Dr. Stark's opinion for controlling weight under § 404.1527(c)(2), or in the alternative, apply the relevant regulatory factors in § 404.1527(c)(2)-(6), in weighing his opinion. However, the ALJ was not required to engage in a formal factor-by-factor assessment of the opinion. She properly acknowledged that Dr. Stark was a treating source and explained why his opinion warranted only little weight. The ALJ had no obligation to say explicitly that she was evaluating whether to give controlling

13

weight to the opinion.  Buros v. Berryhill, No. 17-cv-707-jdp, 2018 WL 2016856, at *4 (W.D. Wis. May 1, 2018).  Similarly, even though the ALJ did not discuss the regulatory factors under § 404.1527(c)(2), plaintiff does not explain how applying them would support a finding of disability.  Id.

### C.  Plaintiff's Mental Status

Relying on Dr. Weber's evaluation of her mental status, plaintiff contends that the ALJ erred in finding that she can work, given Dr. Weber's opinion that plaintiff would experience marked limitations in her ability to withstand routine work stress.  However, the ALJ explained that she found Dr. Weber's marked limitation inconsistent with plaintiff's ability to provide full-time, solo care for four to five grandchildren on a regular basis, as well as manage other activities of daily living.  AR 24.  Plaintiff disagrees, citing Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012), in which the Court of Appeals for the Seventh Circuit held that a person's ability to handle the activities of daily living does not necessarily mean she has the ability to hold a full-time job because "a person has more flexibility in scheduling" daily activities than work activities, can get help with daily activities from other persons and "is not held to a minimum standard of performance [with daily activities], as she would be by an employer."  But plaintiff is in a far different position from plaintiff Bjornson, whom the ALJ described as being able "bathe and dress normally, and even drive and shop."  Id.  As everyone who has cared for small children knows, child care does not provide flexibility in scheduling or any leeway in maintaining a standard of care.  Plaintiff was providing 12 hours

of care a day for four very young children, ranging in age from one to three. The ALJ could reasonably conclude that plaintiff's ability to do this kind of work on a regular basis refutes any contention that she cannot hold a full-time job. This reason also justifies the ALJ's reliance on the state agency psychologists' opinions that plaintiff only had a moderate limitation in her ability to withstand work stress.

Accordingly, I am affirming the commissioner's decision denying benefits and dismissing plaintiff's appeal.

ORDER

IT IS ORDERED that

1. Plaintiff Becky Irene Dingman's motion for instanter, dkt. #14, is GRANTED.

2. Plaintiff's motion for summary judgment, dkt. #9, is DENIED and the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 4th day of September, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge